(85 South. 433)

### GOODWIN v. RIDDLE.   (7 Div. 72.)

(Supreme Court of Alabama.   April 22, 1920.)

**1. Brokers ⊙80—Where with knowledge of facts owner agrees to pay commission, he cannot avoid liability.**

Owner, who was in possession of all of the facts at time of his agreement to pay broker commission, cannot thereafter refuse to pay commission on the ground that in view of such facts the sale had been effected by a third person, and not the broker.

**2. Evidence ⊙171—Parol testimony as to contents of letter held inadmissible.**

In real estate broker's action for commissions, where defense was that third person and not broker had effected the sale, secondary evidence of letter between owner and third person in regard to the transaction was inadmissible; the contents not being so collateral to the issue as to dispense with the best proof thereof.

**3. Witnesses ⊙414(2)—Letter giving defendant's version of transaction in argumentative manner held inadmissible.**

Defendant's letter, containing his version of the transaction involved in the case in argumentative manner, was inadmissible under rule prohibiting a witness from fortifying testimony by proving his declarations, notwithstanding introduction in evidence of letters by plaintiff, where defendant's letter was not in answer to letters introduced by plaintiff.

Appeal from Circuit Court, Etowah County; O. A. Steele, Judge.

Assumpsit by W. P. Goodwin against S. W. Riddle. Judgment for defendant, and plaintiff appeals. Transferred from Court of Appeals under Acts 1911, p. 450, § 6. Reversed and remanded.

Goodhue & Brindley, of Gadsden, for appellant.

The court erred in allowing the letter of July 6, 1916, from Riddle to Goodwin to be admitted in evidence. 20 Ala. 358; 115 Ala. 83, 22 South. 565; 116 Ala. 43, 22 South. 461; 201 Ala. 403, 78 South. 401. Jones on Evidence, 869, 870. The court erred in permitting Riddle to testify to the contents of the letter to Hubbard, which letter Hubbard had in his files at Albertville. 160 Ala. 657, 49 South. 426; 113 Ala. 496, 21 South. 348. Counsel discuss other assignments of error, but without further citation of authority.

O. R. Hood, of Gadsden, for appellee.

Counsel discusses assignments of error, but without citation of authority.

GARDNER, J. Suit by appellant against appellee on common counts, claiming the sum of $75 for work and labor done and account stated. The cause was tried upon these counts and plea of general issue, together with a special plea of recoupment. The trial resulted in a verdict and judgment upon this special plea in favor of the defendant in the sum of $75, from which the plaintiff prosecutes this appeal.

At the time of the transaction (January, 1915) which is the subject-matter of this controversy, plaintiff was and had been for a number of years a real estate agent residing at Albertville, Ala., near which place was located the defendant's farm, which a few years previous had been listed with the plaintiff for sale. The question as to whether the farm was still listed at the particular time of this transaction appears to be in dispute, but this fact is not considered of controlling importance.

⊙For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

In the special plea of recoupment, above referred to, the defendant sets up in substance that plaintiff had represented to him that he had sold his (defendant's) farm, and was entitled to a commission; that relying upon such representations he had paid the plaintiff the sum of $125, but that he afterwards ascertained the representations made were untrue, and that this sum had been wrongfully collected; and therefore the plea seeks a recovery against the plaintiff for the sum so paid. The plaintiff at the conclusion of the trial asked the affirmative charge as to this plea, which was refused. This is the first question argued and here presented for consideration.

To discuss the evidence in detail would serve no useful purpose. It has been carefully read and examined, and we will here attempt a mere general outline thereof. There were concerned in this transaction the defendant, plaintiff (the agent), one Gibson, and one Hubbard. Gibson was the owner of stock in the corporation known as the Albertville Trading Company, of which concern Hubbard was manager. Gibson approached the defendant, Riddle, at one time suggesting a trade for his farm, but no agreement was reached, and the matter was apparently dropped. Subsequently he saw the plaintiff in regard to this farm, and in the course of the conversation told the plaintiff that if he had the farm listed he could work it through him—that "he could help work through the trade." Gibson had offered 18 shares of stock for the farm. It appears that plaintiff afterwards came to the store where Gibson was to talk with him about the matter. Hubbard was considered Gibson's partner in the mercantile business, and communicated to Gibson that defendant, Riddle, would accept 20 shares and would trade upon that basis. Riddle had made this proposition to Hubbard, and had authorized him to submit it to Gibson. However, during this negotiation, Hubbard had talked with the plaintiff in regard to the trade, either at the plaintiff's office or at the store of the mercantile company.

The evidence further shows that on January 13, 1915, plaintiff wrote defendant in regard to the trade, and, the next day had a telephone conversation with him (defendant residing at Gadsden). Defendant insists that the plaintiff then informed him of the amount of work he had done upon this trade; that he had made the sale and would be ready to close the deal, and was entitled to his commission. It was agreed in that conversation that the commission would be $200, payable in three installments. The defendant went to Albertville the next morning and the trade was closed; the defendant selling the farm to Gibson for 20 shares of stock and executing his deed therefor in the plaintiff's office. Defendant again agreed to pay plaintiff $200 as commission, but consented that Hubbard should receive $50 of such sum for his services—this at Hubbard's suggestion. Several letters passed between plaintiff and defendant in regard to the payment of this commission. It is shown that defendant paid $125, $75 to the plaintiff in installments of $50 and $25 and the $50 to Hubbard previously mentioned. In this correspondence, which covered a period of more than a year, the defendant expressly or impliedly agreed to pay the commission, but stated in his testimony that it was in April, 1916, when he first learned the plaintiff had not made the trade, but that the same had been made by Hubbard, and therefore the plaintiff was not entitled to any commission.

As to what facts were brought to defendant's knowledge at this time, the evidence does not disclose. But a careful examination of the testimony shows that before the defendant went to Albertville to close this trade he had received a letter from Hubbard stating that he (Hubbard) had made the trade, and that Gibson had accepted the proposition made by defendant through him, and that the next day Hubbard told defendant that he made the trade, and not plaintiff, Goodwin. Hubbard testified that at the time the transaction was closed defendant informed him that he (defendant) was to pay plaintiff the commission, and that he (Hubbard) then told the defendant that he would be entitled to at least a part of it, as he "really made the trade," and further that he told the defendant all he had to do with the transaction, concealing nothing. That plaintiff had been active and done some work in regard to this trade is without dispute.

The conflict arises as to whether plaintiff or witness Hubbard actually closed the trade. But, however that may be, it appears from the undisputed evidence that the defendant was placed in possession of all the facts as to the activities of Hubbard and the claim on his part that he had made the trade at the time this transaction was closed. Defendant's testimony was that the only additional information he received subsequent to the transaction was from Tom Hubbard (who this party is the record does not disclose), and that he went to see witness Hubbard, who told him substantially the same as he testified in the cause.

[1] While a careful analysis of the evidence may be persuasive that the defendant has become honestly convinced that he has been overreached, and plaintiff is due no commissions, yet it fails to disclose what additional facts bearing upon this transaction had been obtained by the defendant subsequent thereto and while partial payments were being made thereon. But, on the con-

trary, so far as this evidence shows, the defendant was in possession of all facts material to the question in controversy at the time of these agreements to pay the commission. He knew at the time of the transaction all that he ever knew, so far as the record before us discloses. That being the case, the averments of the special plea, to the effect that he had relied upon the statements made by plaintiff as to his part in the transaction and had been misled thereby, are not supported by the proof. We therefore conclude that plaintiff was entitled to the affirmative charge upon this plea.

[2] It will be noted that the defendant's insistence was that this trade was made by Hubbard, and not by the plaintiff, and this fact, therefore, formed one of the foundations for special plea 3. The defendant was permitted to prove a part of the contents of a letter forming a portion of the agreement between himself and Hubbard in regard to the trade, which letter was shown to be in Hubbard's possession, but which was not produced. To this testimony objection was duly made, and exception reserved to the action of the court in overruling the same. We are of the opinion that the contents of this letter was not such a matter so collateral to the issue in the trial as to dispense with the best proof thereof (A. & B. Air Line R. Co. v. Wood, 160 Ala. 657, 49 South. 426), and in this ruling there was error.

[3] In our opinion the court also erred in admitting, over plaintiff's objection, letter of July 6, 1916, which contained the defendant's version of the entire transaction, which was rather argumentative in its nature, and comes within the general rule prohibiting a witness from fortifying his testimony by proving his declarations. Hamilton v. Cranford Merc. Co., 201 Ala. 403, 78 South. 406, and authorities there cited.

Defendant's counsel insist this letter was admissible upon the theory that other letters had been introduced by the plaintiff, and therefore the entire correspondence was admissible. The letters introduced by the plaintiff, however, relate to the agreement between the parties and the implied promises or admissions of the plaintiff, and were proper to be introduced as material to the issues in the cause. We do not think that this would open the way for the introduction of correspondence which serves only to fortify the defendant's theory, but which does not bear upon the issue, or is not in answer to letters offered by the plaintiff.

For the errors indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes