(93 South. 572)

### STARR JOBBING HOUSE et al. v. MAY HOSIERY MILLS. (6 Div. 630.)

(Supreme Court of Alabama. April 20, 1922. Rehearing Denied June 1, 1922.)

**1. Sales ⬠377—Seller's complaint held to state cause of action for buyer's refusal to accept goods.**

In seller's action against buyer for refusal to accept goods, allegations that buyer agreed to purchase described goods, to be delivered in two shipments, that seller made first shipment, and buyer received goods, but afterwards wrongfully returned goods to seller, and refused to accept them, and notified seller not to make the second shipment, that the goods complied with the contract, that seller within a reasonable time thereafter, and, after reasonable notice to buyer, sold goods at a public sale, and that seller sustained damages in a specified amount, constituting the difference between the contract price and the resale price, *held* to state a cause of action.

**2. Sales ⬠271—Goods impliedly warranted to be equal in quality to sample.**

When goods are sold by sample, there is an implied warranty that the bulk of the commodity is equal in quality to the sample, and, if they do not correspond, the buyer may refuse to accept the goods.

**3. Sales ⬠332—Seller may resell goods conforming to sample on buyer's refusal to accept, and recover difference between contract and resale price.**

Where goods are sold by sample, and they correspond to the sample, and the buyer refuses to receive the goods, the seller may resell them at the risk of the purchaser, the damage being the difference between the contract price and the resale price.

**4. Sales ⬠182(1)—Whether goods shipped corresponded to sample held for jury.**

In seller's action for damages caused by buyer's refusal to accept hose sold by sample, the question of whether the hose shipped to buyer corresponded to the sample *held* for the jury.

**5. Trial ⬠174—General charge not asked as to particular count properly refused where evidence tended to prove some of the counts.**

Where there was evidence tending to prove some of the counts, the defendant's request for the general affirmative charge, not applied to any particular count, *held* properly refused.

**6. Evidence ⬠123(2)—Letters from seller to buyer admissible as part of res gestæ in seller's action for buyer's refusal to accept goods.**

In seller's action for buyer's refusal to accept goods, letters written by seller to buyer in reply to letter from buyer written in answer to letter from seller, giving buyer notice that goods would be resold, *held* admissible at instance of seller, as part of the res gestæ.

**7. Trial ⬠85—Admission of letter, a part of which was competent, over objection to entire letter, not error.**

Where objection to letter was to the entire letter, and not to certain parts thereof, the admission of the letter, a portion of which was competent, *held* not error.

**8. Sales ⬠388—In seller's action for buyer's refusal to accept goods under contract calling for two shipments, requested charges ignoring second shipment held properly refused.**

In seller's action for buyer's refusal to accept goods sold according to two sets of samples, to be delivered in two shipments, on buyer's refusal to accept goods delivered by first shipment, and notice to seller not to deliver second shipment, requested charges referring merely to the first shipment, and ignoring the second shipment, *held* properly refused.

**9. Sales ⬠388—Charges not requiring goods shipped to conform to sample held properly refused.**

In seller's action for buyer's refusal to accept goods sold by sample, requested charges not requiring the bulk of the goods to equal the sample in quality *held* properly refused.

**10. Sales ⬠388—Charge ignoring provision of contract held properly refused.**

Where contract for sale of goods according to sample provided that any claim that the quality of the goods is not in accordance with the terms of the contract shall not constitute a cause for cancellation, and requiring complaint to be made in writing within 15 days from time of delivery, requested charges ignoring such provision of the contract were properly refused.

**11. Sales ⬠177—Buyer could not refuse to accept goods delivered in accordance with contract though he notified seller not to deliver at such time.**

Where sales contract specified time of shipment, the buyer could not, by notice to seller to deliver at a time other than that specified in the contract, excuse refusal to receive goods when delivered in accordance with contract.

**12. Sales ⬠333—Notice to buyer of time and place of resale not necessary.**

Where buyers rejected goods, although conforming to sample, and, on being notified by

sellers of the then intention to resell, gave no instructions as to the sale, the buyers were not entitled to be given by sellers reasonable notice of the time and place of resale.

**13. Trial ⬦119—Overruling of objection to anecdote related by counsel in argument to jury held not error.**

Overruling of objection to anecdote related by counsel in argument to jury, not related to any fact in the case, and not stated as a fact and not bearing on any material inquiry before the jury, *held* not error.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Action by the May Hosiery Mills against the Starr Jobbing House and others. From a judgment for plaintiff, defendants appeal. Transferred from Court of Appeals under Acts 1911, p. 450, § 6. Affirmed.

Frank Deedmeyer and James A. Mitchell, both of Birmingham, for appellants.

The measure of damages in case of a breach of contract on the part of the buyer to accept goods ordered by him is the difference between the contract price and the market value at the time of the breach. 179 Ala. 472, 60 South. 270; 198 Ala. 473, 73 South. 648; 159 Ala. 414, 49 South. 228; 171 Ala. 350, 54 South. 641; 205 Ala. 520, 88 South. 657; 6 Ala. App. 103, 60 South. 437.

Beddow & Oberdorfer, of Birmingham, for appellee.

Where buyer refuses to receive and pay for goods, the seller may resell and recover difference between contract price and the price received on resale. 25 Cyc. 520; 93 Ala. 476; 9 South. 609; 9 Port. 104, 33 Am. Dec. 300; 73 South. 148; 16 Ala. App. 338, 77 South. 932.

MILLER, J. The May Hosiery Mills, a corporation, sues the Starr Jobbing House, a partnership, for damages for breach of a contract of sale of 200 dozen hose sold by plaintiff to the defendants, which defendants refused to accept and pay for according to the contract. There was judgment for the plaintiff, and the defendant appeals.

The first three counts in the complaint are the common counts. Demurrers were overruled by the court to count 5, which is assigned as error by the defendant.

Count 5 avers that plaintiff and defendants made a written contract in January, 1920, by which plaintiff was to sell and defendants were to purchase 200 dozen hose, to be seconds, delivered in two shipments; the plaintiff made the first shipment of 100 dozen; they were of class and condition provided for in the contract; that defendants received them, and afterwards wrongfully returned them to plaintiff, and refused to accept them, and notified plaintiff not to make the second shipment as per contract, as they would not be accepted; and it avers plaintiff, "within a reasonable time thereafter, and after reasonable notice to the defendants of the time and place of said sale, at a public sale fairly conducted,' sold said hose for the account of the defendants. This count avers the contract and its terms; it avers the breach; it avers the contract price, and claims $300 damages as difference between it and the resale price; it avers the hose corresponded with and came up to the contract, that defendant wrongfully refused to receive them, and shipped them back to plaintiff; reasonable notice of the intended resale, time and place was averred to have given the defendant; it avers the sale was public and fairly conducted; it claims as damages $300, the difference between the purchase price for the hose and the resale price.

[1-3] This count by these averments states a cause of action; it is not subject to the demurrers assigned to it; and the court did not err in overruling them. The law applicable has been clearly stated by this court in the case of Penn & Montgomery v. Smith, 98 Ala. 564, 12 South. 820, as follows:

"It is a familiar principle that when goods are sold by sample there is an implied warranty by the seller, that the bulk of the commodity is equal in quality to the sample exhibited to the buyer; and if they do not correspond the purchaser may refuse to receive it. Magee v. Billingsley, 3 Ala. 679. If they do correspond, and the purchaser refuses, notwithstanding, to accept the goods, the vendor may resell them at the risk of the purchaser, the damage being the difference between the price at which sold at first and the price obtained on resale. 2 Benj. on Sales, § 1022, n. Before the vendor proceeds to a resale he should manifest his intention to do so by a preliminary notice to the vendee that he intends to resell, and will hold him liable by the price obtained. 2 Benj. 1023, n. In making such resale, the vendor acts as the agent of the buyer in default. His right and duty are so well stated in Brownlee v. Bolton, 44 Mich. 218, we quote what the court say as correct and applicable to this case: 'It is sufficient to say, generally, that the vendor's right of resale must be exercised in good faith, and in such time, and in such manner, and under such circumstances, and by such methods, as will be best calculated to produce the fair value of the property; and in case he seeks to avail himself of it before a jury, it is incumbent on him to adduce the necessary facts to show that, in exercising this right, this manner was observed.' 2 Benj. p. 1022. The resale may be made at public auction, or privately, and it often happens that the goods can be best sold at private sale; but, whether in the one mode or the other, in the absence of any instructions from the buyer, the vendor has the right to exercise his discretion within reasonable bounds; and whether this discretion is exercised properly and in good faith, are questions of fact for the jury. Lewis v. Grider, 51 N. Y. 231."

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

See, also, Lampkin v. Crawford, 8 Ala. 153; 35 Cyc. p. 523, notes 30, 31, page 524, note 34; Johnson v. Carden, 187 Ala. 142, 65 South. 813.

We find only one plea in the record. It is a special plea and general plea combined in one. It denies each allegation of each count, and for special answer to each count says, in substance, that plaintiff's cause of action, as set out in each count, is based on a contract whereby plaintiff agreed to sell defendants a quantity of hose known as "first-class seconds"; that plaintiff did not ship defendants first-class seconds as contracted for, but the first shipment made by plaintiff was a greatly inferior grade than "first-class seconds," to wit, a class of hose known as "thirds" and "fourths," and defendant examined said shipment, returned same to plaintiff, and "defendants aver that the said act of shipping as the first part of said order an inferior grade of hose constitutes a breach of the entire contract." The sufficiency of the plea was not questioned by demurrer.

[4] The written contract contemplated a sale by sample. There was evidence that the sample of some of the 100 dozen hose shipped by plaintiff to the defendant was in evidence before the jury; that they were selected by defendants out of the 100 dozen as inferior, in their opinion, to the contract class of hose. These hose are not before this court. The jury saw them. There was evidence that this sample of the 100 dozen and the 100 dozen complied in every respect with the contract, and there was evidence that they were of a lower and inferior grade to the kind called for in the contract. There was evidence that these samples before the jury were not the ones selected by the defendants. There was testimony that the price of this grade of hose decreased in value after the contract of sale and before the time of delivery, and there was testimony that such hose increased in value during that time, and did not decline in value until after the time of delivery. The evidence was in clear conflict, either by positive testimony or reasonable inferences therefrom, on all material contested issues in the case.

[5] Under this condition of the testimony the general affirmative charges with hypothesis, requested by the defendants, were properly refused by the court. The questions involved by the issues under the conflicting tendencies of the evidence were for the jury to answer from the facts in the case. There was evidence clearly tending to prove some of the counts. These charges were not asked to be given to any particular count, but to the complaint. There are five counts, and, if the evidence tended to prove any one of them, then these charges as written should not have been given. Penn & Montgomery v. Smith, 98 Ala. 564, 12 South. 818; Beall Bros. v. Johnston, 140 Ala. 339, 37 South. 297.

"Before the vendor proceeds to a resale he should manifest his intention to do so by a preliminary notice to the vendee that he intends to resell, and will hold him liable by the price obtained." Penn & Montgomery v. Smith, 98 Ala. 565, 12 South. 820.

[6, 7] Hence the letter written and dated at Nashville, October 19, 1920, addressed and mailed to the defendants at Birmingham, notifying them that on Monday, October 25, at 10 o'clock a. m., plaintiff will sell the goods "for your account" at auction to the highest bidder for cash, and hold defendant liable for the difference between the sale price and the contract price, signed by plaintiff's attorney, was competent evidence in the case. It was a manifestation of intent by the vendor to resell the hose, and to hold defendants liable for the loss, if any, in the price obtained. Four letters written by defendant to plaintiff were introduced in evidence by the plaintiff. The plaintiff replied to each by letter; they were mailed to and received by defendant. These four replies were offered in evidence by plaintiff. The defendant objected to the introduction of each because they "contain self-serving declarations; are argumentative, and seek to fortify plaintiff's case." The trial court "called for the letters, drew a pencil through the words underscored, and instructed the jury not to consider these words so underscored, as it was excluded from their consideration." The court then overruled defendant's objection to the letters and admitted them in evidence, and the defendant excepted. These four letters contain matter bearing upon the issues in the case; each letter contains matter in reply to letters of defendant relevant to the subject-matter involved in the cause, and forming a part of the res gestæ of the transaction between them. They are admissible on the same principle that a conversation between the parties would have been. These letters were written conversations between the parties on the subject-matter of the suit, and formed a part of the res gestæ of the transaction between them. The objection of the defendant was to each entire letter, not to certain parts of it. The objection did not point out the objectionable and incompetent statements, if any, in each letter; and, as each letter contained competent evidence in reply to letters of the defendant, the court will not be put in error for overruling the objection to the letters as a whole. The case of Goodwin v. Riddle, 204 Ala. 216, headnote 3,[1] sustains rather than condemns this ruling of the trial court. Moses v. Katzenberger, 84 Ala. 95, 4 South. 237; Wefel v. Stillman, 151 Ala. 249, 44 South. 203; 10 R. C. L. p. 981, § 163, headnotes 14 and 15.

[8-10] These three charges were separately requested by defendant, and each refused by the court:

---

[1] 85 South. 433.

"I charge you that, if you find from the evidence that not all of the hose shipped by the plaintiff to the defendants were seconds, your verdict should be for the defendants."

"I charge you that, if you find from the evidence that a reasonable number of the hose shipped by the plaintiff to the defendant were not seconds, your verdict should be for the defendants."

"I charge you that, if you find from the evidence that some of the hose shipped by the plaintiff to the defendants were not all seconds, your verdict should be for the defendants."

The written contract in evidence provides for the 200 dozen hose to be "seconds" in grade. It directed two double sets as samples to be shipped by parcel post at once. It is dated January 29, 1920.

In Magee v. Billingsley, 3 Ala. 696, this court wrote:

"The result of the authorities is, that on a sale by sample, the vendor stipulates that the bulk of the commodity shall be equal to the sample, in quality. * * * And this stipulation is regarded in law as an implied warranty, not that the article is merchantable, but that the bulk corresponds with the sample, or is of the same quality."

See, also Penn & Montgomery v. Smith, 98 Ala. 564, 12 South. 818.

One charge directs verdict for defendants if the jury find from the evidence that not all of the hose shipped were seconds; one charge directs verdict for defendant if the jury find from the evidence that a reasonable number of the hose shipped were seconds; and the other charge directs verdict for defendants if the jury find from the evidence that some of the hose shipped were not all seconds. These charges ignore entirely the second shipment of 100 dozen hose to be made under the contract, and their quality, which defendants directed plaintiff not to ship. The contract called for two shipments, one in July and the other in August. The contract provides:

"Each delivery stands as a separate sale. Failure to ship any delivery on time shall in no respect vitiate the remaining installments nor constitute cause for the cancellation of these later installments."

None of these charges measure up to the rule that the bulk of the hose shall be seconds—shall be equal to the sample—in quality. This written contract contains this condition:

"Any claim that quality of goods is not in accordance with terms of contract shall not constitute a cause for cancellation of contract or any part thereof. Complaint as to quality must be made in writing within fifteen days from time of delivery of any goods' and seller has the privilege of replacing within reasonable time any goods agreed upon as not complying with this contract."

These charges make no reference to this condition in the contract between the parties. They ignore that part of the contract. They fail to hypothesize and state if the jury believe from the evidence that the plaintiff failed or refused within a reasonable time after notice to replace the hose that did not comply with the contract. These charges were also misleading and confusing. The court did not err in refusing them.

[11] This charge requested by the defendants was refused by the court:

"I charge you that defendants had a right under the law to notify plaintiff in the month of June, 1920, not to make shipment of the goods contracted for to be shipped in August, 1920, until the shipment to be received first under the contract had been received."

The contract called for the hose to be delivered in two shipments; 100 dozen to be shipped in July, and 100 dozen in August. The contract did not authorize defendants or give the defendants the right to direct plaintiff not to make the August shipment until the July shipment under the contract had been received by the defendants. The time specified in the contract for the shipments to be made could not be changed or modified by one party without the consent of the other. Hence the court did not err in refusing this charge. Andrews et al. v. Tucker, 127 Ala. 602, 29 South. 34.

This charge was requested by the defendants. It was refused by the court:

"I charge you that, if you are not reasonably satisfied that the defendants, or one of the defendants, had notice of the time and place of the auction sale set out in plaintiff's complaint, your verdict should be for the defendants."

[12] Counts 4 and 6 aver that reasonable notice of the time and place of the auction sale was given defendants previous to the sale. That averment in those counts rendered proof thereof necessary. But counts 1, 2, and 3—the common counts—contained no such averments. The right to a recovery by plaintiff under any one of them did not require that reasonable notice of the time and place of sale be given to the defendants. The defendants gave no instructions as to the sale. Penn & Montgomery v. Smith, 98 Ala. 564, 12 South. 818. This charge directed verdict for the defendants unless such notice was given defendants, or one of them. Such proof was not necessary under some counts in the complaint; hence the court properly refused the charge. West v. Cunningham, 9 Port. 104, 33 Am. Dec. 300.

[13] Plaintiff's counsel in his argument to the jury related an anecdote or story which occurred in his office as illustrative of his theory of the case from the evidence. It was within proper bounds of the discussion of the case. It was not related or stated as a fact, or as evidence of any fact in the

case, or as bearing on any material inquiry before the jury. The court did not err in overruling the objection of defendants to it. Peel v. State, 144 Ala. 126, headnote 9, 39 South. 251; Cross v. State, 68 Ala. 476.

Finding no error in the record, the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.